UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY ALLEN COOK,<br><br>      Plaintiff,<br><br> v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>      Defendants. | Case No. C23-5773-JNW-MLP<br><br>REPORT AND RECOMMENDATION AND ORDER |

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Jeffrey Allen Cook, proceeding *pro se* and *in forma pauperis*, alleges a violation of his Eighth Amendment rights based on the conditions of his confinement due to medical care he received while in the Washington State Department of Correction's ("DOC") custody at the Washington Corrections Center ("WCC"), Stafford Creek Corrections Center ("SCCC"), and Washington State Penitentiary ("WSP"). (Am. Compl. (dkt. # 13).)

This matter is before the Court on: (1) Defendants Mark Wentworth, Leigh Gilliver, Erin Lystadt, Ryan Harrington, Jennifer Meyers, and Joan Palmer's (collectively, "Defendants") Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Defs.' Mot. (dkt. # 26)); (2) Plaintiff's Motion to Extend Filing Deadline (Pl.'s Mot. (dkt. # 31)), which seeks

1  to extend the deadline to complete discovery from July 12, 2024, to July 21, 2024; and (3)

2  Defendants' Motion to Stay Pending Resolution of Defendants' Motion for Summary Judgment

3  (dkt. # 34). Plaintiff filed a Response (dkt. # 30) and Amended Response (Am. Resp. (dkt. # 32))

4  to Defendants' Motion, and Defendants filed a Reply (dkt. # 33). The only issue presented in

5  Defendants' Motion is whether Plaintiff exhausted all administrative remedies pursuant to the

6  Prison Litigation Reform Act ("PLRA") before filing this action. (Defs.' Mot. at 6.) No parties

7  filed responses to Plaintiff's Motion or Defendants' Motion to Stay.

8        Having considered the parties' submissions, the balance of the record, and the governing

9  law, the Court recommends that Defendants' Motion for Summary Judgment (dkt. # 26) be

10 DENIED; the Court GRANTS Plaintiff's Motion to Extend Filing Deadline (dkt. # 31); and the

11 Court GRANTS Defendants' Motion to Stay (dkt. # 34).

12                                    I.       BACKGROUND

13      A.       **Plaintiff's Claims**

14       Plaintiff's Amended Complaint, filed on October 9, 2023, pursuant to 42 U.S.C. § 1983,

15 alleges one claim against Defendants for violating his Eighth Amendment rights by failing to

16 provide sufficient medical care for Plaintiff's seizures and related conditions. (Am. Compl. at

17 6-19.) Defendants answered the Amended Complaint on January 23, 2024 (dkt. # 22), and filed

18 the instant motion for summary judgment on June 4, 2024 (dkt. # 26).

19       Plaintiff alleges that Defendants had policies and/or practices of failing to provide timely

20 and appropriate medical care for his seizures and spinal disorder, in violation of his Eighth

21 Amendment rights against cruel and unusual punishment. (Am. Compl. at 9.) Specifically,

22 Plaintiff claims that the DOC discontinued his prescription medications when he was taken into

23 custody at WCC in June 2020. (*Id.* at 12.) Instead, Plaintiff was allegedly prescribed different

1  medications that failed to treat his seizure conditions, and Plaintiff immediately began to suffer
2  from painful seizures. (*Id.* at 12-13.) Plaintiff was transferred to SCCC in September 2020, and
3  the Amended Complaint alleges that Plaintiff's efforts to receive care were thwarted because the
4  Defendants repeatedly promised care that was never delivered. (*Id.* at 13.) Plaintiff was
5  transferred to WSP in October 2021, where his issues purportedly continued. (*Id.* at 15-16.) In
6  June 2022, Plaintiff claims that he was finally prescribed an effective medication to treat his
7  condition. (*Id.* at 16-17.) During this time, Plaintiff alleges that he filed "numerous grievance
8  complaints" regarding his care, but that "[a]ll were returned with various violations of form
9  policy or unkept promises of care." (*Id.* at 18.) Plaintiff alleges that Defendants' policy of
10 deliberate indifference to his medical needs caused significant and ongoing pain and suffering.
11 (*Id.* at 18-19.) Plaintiff seeks $2,000,000 in damages and injunctive relief. (*Id.* at 25.)

12        **B.        Grievance Program and Plaintiff's Administrative Remedy History**

13        Defendants submitted a declaration from DOC Health Service Administrator Rachelle
14 Lusk detailing the DOC's Grievance Program and attaching a copy of the DOC's Grievance
15 Program Manual. (Lusk Decl. (dkt. # 27) at ¶¶ 3-4, Attach. A.) Incarcerated individuals may file
16 grievance requests on a wide range of issues related to their custody. (*Id.* at ¶ 4.) Grievances are
17 reviewed at four levels: Level 0, Level I, Level II, and Level III. (*Id.* at ¶ 6.) Grievances are
18 initiated at Level 0, Level I, or Level II depending on the type of grievance submitted. (*Id.*)
19 Prisoners may appeal grievance responses to the next level of review until they reach Level III.
20 (*Id.* at ¶¶ 6-7.) Level III decisions are not appealable, so filing an appeal to Level III exhausts an
21 individual's administrative remedies. (*Id.* at ¶ 7, Attach. A at 40.)

22        Ms. Lusk also stated that incarcerated individuals receive an orientation to the grievance
23 procedure upon arrival at their respective facility. (Lusk Decl. at ¶ 5.) Grievance request forms

REPORT AND RECOMMENDATION AND
ORDER - 3

are made available to all incarcerated individuals, and copies of the grievance manual are maintained in the prison law library. (*Id.*) Defendants did not offer any evidence specific to Plaintiff's purported orientation on the grievance procedure, experiences filing grievances, or access to the grievance manual. (*Id.*)

According to records submitted by Defendants, Plaintiff filed 47 grievances while in DOC custody between September 2020 and September 2023. (Lusk Decl. at Attach. B.) Defendants submitted copies of 14 grievances that they assert are relevant to Plaintiff's claim. (*Id.* at Attachs. C-M.) Plaintiff submitted copies of an additional eight grievances not already attached by Defendants. (Dkt. # 32-1 at 2-30.) The grievances submitted by the parties generally relate to Plaintiff's dissatisfaction with the treatment of his seizures, provision of effective anti-seizure medication, and requests to be seen by a specialist—consistent with the Amended Complaint's allegations. Plaintiff did not appeal any grievances relevant to his claim to Level III.[1] (Lusk Decl. at Attach. B.)

## II.    DISCUSSION

### A.    Legal Standards

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The prisoner must complete the administrative review process in accordance

---

[1] According to Defendants' records, Plaintiff appealed only one of his 47 grievances to Level III, and that Level III grievance was unrelated to Plaintiff's present lawsuit alleging inadequate medical care. (Lusk Decl. at Attach. B.) Plaintiff does not appear to argue otherwise, and instead contends that Defendants "thwarted" his grievance efforts, as discussed below. (*See* Am. Resp. at 3.)

REPORT AND RECOMMENDATION AND ORDER - 4

with the applicable rules. *Woodford*, 548 U.S. at 92-95 (requiring "proper" exhaustion, meaning full compliance by a prisoner with all procedural requirements of an institution's grievance process).

Defendants bear the initial burden of showing that there was an available administrative remedy, and that Plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Once that showing is made, the burden shifts to Plaintiff, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.

Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to Plaintiff, shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1168; *see* Fed. R. Civ. P. 56(a). Any unexhausted claims should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162. Since failure to exhaust administrative remedies is an affirmative defense, "the ultimate burden of proof remains with the defendant." *Albino*, 747 F.3d at 1172.

**B.    Exhaustion of Administrative Remedies**

The evidence provided by the parties shows that Plaintiff did not appeal any relevant grievances to Level III—the highest level within the DOC's review. (Lusk Decl. at ¶ 21, Attach. B.) Accordingly, Defendants argue they have met their initial burden of showing there was administrative remedy available to Plaintiff that he failed to exhaust. (Defs.' Mot. at 7-9.)

However, Plaintiff has presented evidence suggesting that administrative relief was exhausted once Defendants granted relief to his satisfaction. In *Harvey v. Jordan*, the plaintiff filed a grievance demanding a hearing and evidence related to disciplinary charges that had

REPORT AND RECOMMENDATION AND ORDER - 5

1  resulted in the revocation of his privileges. 605 F.3d 681, 684 (9th Cir. 2010). Prison officials

2  granted the plaintiff's grievance request, but subsequently refused to provide him with the

3  promised hearing or evidence and denied subsequent grievances as untimely. *Id.* at 685. Plaintiff

4  filed suit, but the district court dismissed his claims for failure to exhaust administrative

5  remedies. *Id.* at 683. The Ninth Circuit reversed that dismissal, holding instead that the plaintiff

6  "exhausted the administrative process when the prison officials purported to grant relief that

7  resolved his due process grievance to his satisfaction." *Id.* at 685. "An inmate has no obligation

8  to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his

9  administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials

10 actually provide the relief that they have promised." *Id.* at 685 (citing *Abney v. McGinnis*, 380

11 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to

12 file a new grievance where doing so may result in a never-ending cycle of exhaustion.")). "Once

13 the prison officials purported to grant relief with which [the plaintiff] was satisfied, his

14 exhaustion obligation ended." *Id.*

15     The evidence before this Court, when viewed in the light most favorable to Plaintiff, is

16 analogous to *Harvey*. In his Amended Response, Plaintiff submitted a typed copy of a Level I

17 Initial Grievance No. 20714203 from October 2020. (Dkt. # 32-1 at 3.) In that grievance,

18 Plaintiff complained about the neurological disorder and anti-seizure medications that formed the

19 basis of this action and requested medical attention. (*Id.*) The space reserved for prison officials'

20 response stated: "I, Kimberly Creswell RN2 began an investigation regarding [the grievance]. I

21 reviewed all pertinent records including the offender's medical chart and interviewed named

22 grievant." (*Id.*) According to this record, Plaintiff was satisfied with the relief offered by prison

23 officials: "At this time Offender Cook feels the items in the grievance have been adequately

REPORT AND RECOMMENDATION AND
ORDER - 6

1  addressed and is comfortable with dropping this grievance at this time." (*Id.*) The grievance is

2  signed by Grievance Coordinator "D Dahne" and dated October 27, 2020. (*Id.*)

3        While the parties' evidence is not entirely clear as to the care Plaintiff received, Plaintiff

4  asserts that he did not receive the care that Defendants promised in response to his grievances.

5  (Am. Resp. at 7-8.) Plaintiff's affidavit cited cancelled appointments, lack of access to urgent

6  care, and delayed diagnostic procedures, and stated that subsequent grievances were ignored or

7  dismissed. (*See id.*) "Every grievance I filed related to seizure activity was resolved informally

8  with the promise of upcoming care . . . . The promised care was not delivered, and the process

9  was started over. This was a loop cycle, resolved on an unfulfilled promise or denied and

10  regrieved." (*Id.* at 8.) As a result, there is an issue of material fact as to whether Plaintiff

11  exhausted his administrative remedies pursuant to *Harvey*.

12        In response, Defendants' three-page Reply failed to identify evidence to the contrary.

13  (*See generally* Reply.) Instead, Defendants argue, without citing any authority, that "simply

14  voluntarily choosing to accept responses to his complaints does not amount to complete

15  exhaustion of administrative remedies." (*Id.* at 2.) This is not the standard articulated by the

16  Ninth Circuit. While the ruling in *Harvey* has been limited to instances where "the prisoner was

17  induced into abandoning his appeal by the unfulfilled promise of relief," that fact pattern is

18  relevant here. *See Benitez v. Cnty. of Maricopa*, 667 F. App'x 211, 212 (9th Cir. 2016). Plaintiff

19  argues: "Each of the grievances was resolved with the promise of an upcoming appointment.

20  These promises were not kept, and the issues were reopened with another request." (Am. Resp.

21  at 4; *see also id.* at 8.) Plaintiff's arguments are supported by his affidavit and the DOC record

22  described above. (*See* Am. Resp. at 7-9; dkt. # 32-1 at 3.) Based on the evidence before the

23

REPORT AND RECOMMENDATION AND
ORDER - 7

1    Court, it is possible that Plaintiff exhausted his administrative remedies as early as October 2020

2    when the DOC promised relief that, Plaintiff asserts, it subsequently failed to deliver.

3          There is additional evidence that Plaintiff's efforts to exhaust his claims were frustrated

4    because Defendants failed to explain how to use the Grievance Program. *See Albino*, 747 F.3d at

5    1174-76 (finding no available administrative remedy where defendants failed to show inmates

6    were told how to use the grievance procedure); *see also Ramirez v. Young*, 906 F.3d 530, 535

7    (7th Cir. 2018) ("[R]emedies are available only if a prisoner has been notified of their

8    existence."). Plaintiff's affidavit stated that the DOC failed to provide him with a physical copy

9    of a "grievance manual" at WCC. (Am. Resp. at 7.) While an electronic copy was purportedly

10   available in the law library, the law library was closed during the COVID-19 pandemic and

11   Plaintiff was not able to access it. (*Id.*) Similarly, Plaintiff stated that he requested a copy of the

12   grievance manual from staff at SCCC but did not receive one. (*Id.*) In response, Defendants

13   argue that Plaintiff's "refusal to request a manual or review one in the facility library does not

14   amount to a system 'incapable of use.'" (Reply at 2.) Defendants do not, however, submit any

15   evidence specific to Plaintiff's access to grievance procedures, training, or handbooks. Nor do

16   Defendants address Plaintiff's affidavit testimony that he requested grievance manuals at two

17   different facilities but was not provided access on either occasion. (*See* Am. Resp. at 7.)

18         "If material facts are disputed, summary judgment should be denied." *Albino*, 747 F.3d at

19   1166. Since the undisputed evidence, viewed in the light most favorable to Plaintiff, does not

20   show a failure to exhaust, this Court recommends that Defendants' Motion for Summary

21   Judgment (dkt. # 26) be denied.

22

23

REPORT AND RECOMMENDATION AND
ORDER - 8


     **C.    Extension of Time to Complete Deadline**

Plaintiff's Motion requests that the Court extend the discovery deadline from July 12, 2024, to July 21, 2024. (Dkt. # 31.) Plaintiff explains that the original July 12 deadline was imposed due to a "transcription error," and therefore requests an extension of the discovery deadline to July 21 (*Id.*) Defendants did not file a response to Plaintiff's Motion. Though the requested deadline has already passed, the Court finds no reason to deny Plaintiff's unopposed motion. Accordingly, the Court grants Plaintiff's Motion (dkt. # 31).

     **D.    Motion to Stay**

Defendants' Motion to Stay seeks to stay the current August 12, 2024, deadline for dispositive motions until the Honorable Jamal N. Whitehead rules on this Report and Recommendation and any related objections. (Dkt. # 34.) Plaintiff did not file a response to Defendants' Motion to Stay, and the Court finds good cause to stay this deadline pending Judge Whitehead's ruling. Accordingly, the Court grants Defendants' Motion to Stay (dkt. # 34), and orders that the parties' deadline to file dispositive motions be stayed until thirty (30) days after Judge Whitehead rules on this Report and Recommendation and any objections filed thereto.

### III.    CONCLUSION

For the foregoing reasons, this Court recommends that Defendants' Motion (dkt. # 26) be DENIED; the Court GRANTS Plaintiff's Motion (dkt. # 31); and the Court GRANTS Defendants' Motion to Stay (dkt. # 34). The parties' deadline to file dispositive motions shall be stayed until **thirty (30) days** after Judge Whitehead rules on this Report and Recommendation and any objections filed thereto. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 5, 2024**.

The Clerk is directed to send copies of this Report and Recommendation and Order to the parties and to the Honorable Jamal N. Whitehead.

Dated this 15th day of August, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge